Morning, ladies and gentlemen. As you can see, we're surrounded by old-timers. I am presiding in the absence of Judge Kenney, who is listening on the telephone. I am here. See? It's like the voice from on high. So, we will proceed. The first case, which is O'Connor-Spinner v. Calvin Colvin. Mr. Brenna. Thank you, Your Honor. May it please the Court. In a Social Security disability case, in assessing a claimant's residual functional capacity, what the claimant can and cannot do, an ALJ is required to consider all of the relevant evidence and address that evidence in a balanced manner. The ALJ must confront any evidence that is contrary to his conclusion and explain why it was rejected. If the ALJ fails to do that, it's reversible error. In this case, the ALJ found that Ms. O'Connor-Spinner's depression was not severe and went through the evidence that supports that conclusion. The ALJ didn't mention seven pieces of evidence that are contrary to that decision. And I've set those out in my brief, and I can go through those if you'd like. But the decision by the ALJ is, frankly, pretty one-sided and doesn't... I mean, obviously, I don't like the conclusion, but the problem is not... If it were your side, you'd be happy about it, but the one-sided, well, it gives you that tragedy. And I'm not here to ask the Court to weigh the evidence, but I'm here to ask the Court to order the ALJ to consider all of the evidence on both sides of that issue. And the law requires that. So what you want is a remand. Yes, absolutely, Your Honor. Is this page 18 of your brief that you're talking about, these seven things that were left out? They've got little dots in front of them? Yes. Okay. So those are the issues you said he overlooked or ignored? Right. Yeah, they're just not mentioned. Well, in one of them, like the first one, for example, there was a diagnosis by a psychiatrist that Ms. O'Connor Spinner's depression was... that there was a diagnosis of major depression, recurrent, severe. The ALJ mentions the diagnosis of depression, but doesn't mention the diagnosis or the severity, that it was recurrent and that it was severe, and ends up finding in the decision that her depression was not severe. We did look at some document, at least at some point in her life, where she seemed to be doing pretty well. Yeah, and there are times it's kind of a typical case or classic case of depression. There are times when she's doing pretty well. There are other times when she's not. And as this court has noted in Scroggum and other cases, depression symptoms and mental health symptoms generally wax and wane. And so she's, at times, done pretty well. At other times, she's not done very well at all. And over the course of the time involved here, which goes back to December of 2003, that's what we've seen, is sometimes she's doing pretty well and sometimes she's not. And for her to be able to sustain work when she has these periods of waxing and waning, an employer's not going to put up with that. This has already been back once, hasn't it? Yes, this is O'Connor Spinner 2, I guess. And you went to O'Connor Spinner 3. No, this is the second time this case has been before the court. And so, yeah, I'm asking for a remand so that the ALJ will consider the evidence on both sides of this issue. And it's material because when the ALJ does consider both sides of the issue, if he decides that, oh, yeah. I think you made your point. Excuse me? I think you made your point. Okay, okay. Well, anyway, looking at these two pages, this is what you're saying is, was it ignored or not properly considered? Right. Because the problem with all of these Social Security cases is there are people who are generally got a lot of things wrong. Now, in this case, did she descend to the fifth level or did they get that far? Yes, this is a step five decision. Okay, she did step five when some facetiously say there's a job that no claimant wants and that no employer wants to hire them. But that's another subject. Right. But when you get to that level, there are still opportunities available according to the vocational, whatever you call them. Right, vocational expert. Yes. And given the residual functional capacity and then the accompanying hypothetical question to the vocational expert, the vocational expert said there are jobs. I guess you're saying that her level of depression would make her incapable of handling any of these jobs. Right. I mean, what we're talking about here is severe depression. She's impulsive. These pieces of evidence show a severe level of depression, impulsivity, inability to control her temper. Well, if the judge reviews the complaints and reviews the medical evidence, that would take care of the problem. Right, right. He has to review it on remand and say, okay, I'm looking at all of the evidence. I'm not just going to tell you about what I think of the evidence that supports a denial. I'm also looking at the evidence that supports an allowance and tell you why I'm accepting that or rejecting that. Until you get a total view of that, you don't have any predicate for the ability of her to work. Right. Yeah.  Okay. This is Judge Kainey. Did the ALJ acknowledge the instruction we gave on remand? Yes. That was it, huh? Yeah. Tipped his hat to it. In the first time this case was before this court, the court said, ALJ, you have made a finding that Ms. O'Connor Spinner has moderate difficulties with concentration, persistence, and pace, but you didn't include that in the hypothetical. And on remand, the ALJ said, well, I see what the court said. I find that she, in fact, does not have moderate difficulties with concentration, persistence, and pace, so therefore I don't have to include that in the hypothetical question. You're saying disobeyed the court on remand? Ignored would be a better word. Either one of those works. No, no. Well, look, these are always tough, and that's the problem, and when you put a magnifying glass on it, it becomes difficult because people have lots of problems and they can still do certain things. I understand that. And if this was about the ALJ didn't mention that she had a bunion on her third toe or that she had a cold for a week, I wouldn't be here. But these are all to do with her depression, and they all indicate severe depression. She talks about that at least half of her day she wishes she was dead. And, you know, a person can't function when you're in that kind of state. Hard to function if you're half dead. You've got to save yourself some time. Okay. Thank you. Thank you. Mr. Nelder?  Andrew Nelder on behalf of the Acting Commissioner of the Social Security Administration. In regards to the question of whether the ALJ ignored or looked sideways when the court issued its previous instructions, I want to note a couple of things. First, the ALJ who made the decision that is now before the court is not the same ALJ that made the previous decision. What difference does that make to us? I think it's a credibility difference because you're not having one ALJ flip-flop. You're actually having one ALJ make a decision, and then another ALJ comes and looks at the evidence and says, hey, this is a little bit different. This ALJ didn't quite consider what was going on over here. So it's not that much of a flip-flop issue. Granted, you're correct. I mean, it's the decision that's before the court, and it's the court's instructions that are at issue. The second point I'd like to make, though, is that that argument was waived. That's a law of the case argument that this court had previously established that CPP was a moderate limitation or arguably had established that depression was a severe impairment. Law of the case, number one, doesn't apply. But more importantly, it's an argument that was not made before this court. It was actually an argument that was made before the district court. The district court found that law of the case did not apply, and then an appellant abandoned that argument before this court. So it's quite frankly not at issue.  Do you mean the level of depression is not at issue? No, no, the level of depression is absolutely at issue. I'm saying the question of whether or not the ALJ disobeyed this court and the instructions on remand is not at issue. Well, you can't. There are two different ALJs. What was the space of time between that one and this one? The first ALJ's decision was in 2006, and the second ALJ's decision, the one that's before this court, was in 2012.  Right, and additional evidence that was added. And I guess they're trying to say that she's worse. That would be their argument. Maybe there's no comparison, but is it still a credibility thing? Is that a possibility, a testimony and thing? Credibility is not really raised in this case. It's not a question of appellant's credibility. The sort of sole laser focus here are these seven issues cited by appellant. This case is really just about what the ALJ did not say. And it's a question of we have this evidence out here that the ALJ did not discuss. Was the ALJ required to discuss it? That is the laser focus of this case. And appellant's argument is that these items show that the appellant actually had depression as a severe impairment. My argument is that the ALJ did not need to discuss those items. And the reason for that is the seven issues raised by appellant are argument is that the ALJ was not required to discuss those particular citations, pieces of evidence in the record. Because he didn't think there really was that serious level of depression? He obviously did not think there was that serious level of depression. That's what I mean. I am arguing that he did not need to discuss it because there's just a mountain of evidence on the other side showing that depression is not severe. And when you look at the ALJ's decision, depression was not sort of a hidden ball in this case. Depression was the issue. When it came back on remand, the ALJ gave an exacting focus to the issue of depression. This is not a case where there is an ailment that the ALJ gave short shrift to or forgot to mention at all and we're wondering, oh, what did the ALJ think about this? The only issue was depression, and the ALJ dove into it headfirst and gave it exacting detail and cited numerous documents that support the finding that depression just was not a severe impairment. The ALJ went through a lot of evidence, in short, but the real issue was a report from a state agency psychologist, Dr. Umversoth. He's the person that initially found moderate limitations in concentration, persistence, and pace, but then flip-flopped in his analysis, scratched out that he found moderate limitations in concentration, persistence, or pace, changed it to a finding of mild limitations in concentration, persistence, or pace. And then when this doctor wrote his analysis out of functional capacity, found that there were moderate limitations in concentration, persistence, or pace. That decision, that opinion by the doctor, the ALJ notes, is just all over the map and not supported. And so what our ALJ here did was look at that and said, hey, if I look at all of this evidence in the record, there's just no support for depression as a severe impairment, and there's no support for concentration, persistence, or pace as a moderate limitation. And again, the ALJ went through all this evidence. Notably, we had a new psychologist examine the appellant in 2009, Dr. Kurtzholz. Dr. Kurtzholz didn't find any functional limitations. Dr. Kurtzholz did not find that depression was a severe impairment. The only diagnosis was bipolar disorder, and that was by history, meaning that it was as reported by the appellant. Then you have Dr. Shipley, who also looked at the records, did not examine the appellant, but looked at the records, looked at Dr. Kurtzholz's report, and found also that depression was not a severe impairment. So what the ALJ has is two state agency psychologists, both of whom find that depression is not a severe impairment, or I should say one who does not find depression is a diagnosis and the second does not find it as a severe impairment, and then takes that in addition to numerous other pieces of evidence, which I cite in our brief, and the conclusion is it's just not a severe impairment. If the court has no further questions. No. All right. Do you have anything further, sir? Yes, very briefly. This court, of course, is not a jury. The commissioner seems to be asking the court to weigh the evidence and look at the evidence in favor of one side and look at the evidence in favor of the other and then make a decision, and that's not for this court to do. That's for the ALJ to do. The ALJ in this case didn't do that. This court needs to remand this case for the ALJ to consider all of the evidence, assess it in a balanced manner. If the ALJ accepts that evidence, then include those limitations in the residual functional capacity assessment and the hypothetical question. If the ALJ rejects that evidence, he must articulate or explain his reasoning. Well, he says there's a mountain that said she's not severely impaired. There's evidence that says that it's not severe. There's evidence that says that she is severe. That's not for this court to say, well, I'm going to look at the scales. No, we don't want to do that. You're the one that looks through all these documents. You've got seven points here, things that were not looked at, and if there's a mountain on the other side, then, of course, that's different. This is frustrating because I haven't looked at all these documents and would prefer not to unless there's something that's really a glaring error. Well, and the glaring error is that the ALJ looked at the evidence that supports a denial or supports a finding that the depression was not severe and didn't deal with, didn't articulate, didn't confront the evidence that finds the other way. And that's for the ALJ to do, and he hasn't done it here. Thank you. Thank you. Thank you to both sides. We'll take the case under review.